**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**REX SHAMBRAISS WARD,**

       **Petitioner,**

                         **CASE NO. 2:07-cv-41**
   **v.**                          **JUDGE FROST**
                              **MAGISTRATE JUDGE KING**

**DEBORAH TIMMERMAN-COOPER, Warden,**

       **Respondent.**

<u>**REPORT AND RECOMMENDATION**</u>

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254.  This matter is before the Court on the instant petition, as amended, respondent's return of writ, petitioner's traverse, and the exhibits of the parties. For the reasons that follow, petitioner's motion to expand the record, *see* Doc. No. 13, is **DENIED.**  The Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

**PROCEDURAL HISTORY**

Petitioner was indicted by the January 10, 1997 term of the Franklin County grand jury on two counts of kidnapping, in violation of O.R.C. §2905.01, two counts of aggravated burglary, in violation of O.R.C. §2911.11, three counts of robbery, in violation of O.R.C. §2911.02, four counts of rape, in violation of O.R.C. §2907.02, three counts of theft, in violation of O.R.C. §2913.02, four counts of receiving stolen property, in violation of O.R.C. §2913.51, one count of aggravated robbery, in violation of O.R.C. 2911.01, and one count of felonious assault, in violation of O.R.C. 2903.11. *Exhibit A to Return of Writ*.  On October

17, 1997, while represented by counsel, petitioner pleaded guilty to the charges. *Exhibit B to Return of Writ*. On January 12, 1998, the trial court sentenced petitioner to an aggregate prison term of thirty-eight years incarceration. *Exhibit C to Return of Writ.* On January 21, 1998, after a hearing, petitioner was classified as a sexual predator. *Exhibit D to Return of Writ.* Petitioner did not timely appeal; however, on June 30, 2006, more than eight years after he was sentenced, he filed a *pro se* notice of appeal and motion for delayed appeal pursuant to Ohio Appellate Rule 5(A). *Exhibits F and G to Return of Writ.* As cause for his untimely filing, petitioner represented that he did not know that he had the right to appeal, and neither the trial court nor his attorney advised him of the right to appeal or of the time requirements for filing an appeal. *See id.* On August 8, 2006, the appellate court denied petitioner's motion for delayed appeal. *Exhibit J to Return of Writ.* Petitioner filed a motion for reconsideration, which motion was denied. *Exhibits K and L to Return of Writ.* Petitioner filed a timely appeal to the Ohio Supreme Court. *Exhibits N and O to Return of Writ.* On December 13, 2006, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question. *Exhibit Q to Return of Writ.*

On January 18, 2007, petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254.[1] He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

---

[1] On February 9, 2007, petitioner filed a motion to amend the petition, raising the same claims that were presented in the initial petition. *See* Doc. No. 4. On March 16, 2007, the Court granted petitioner's motion to file an amended petition. *See* Doc. Nos. 4, 9, 10.

> 1.  Trial counsel ineffectiveness rose to deficient performance at sentencing hearing that prejudice[d] the petitioner from perfecting a timely appeal when counsel failed to file notice of appeal on such a lengthy sentence, and failed to advise petitioner of his right to file a direct appeal and as a result deprived petitioner of his right to appeal, and appellate court erred in their judgment that petitioner had not demonstrated a reasonable explanation for failure to perfected a timely appeal....
>
> 2.  The appellate court erred in its decision denying petitioner leave to file a delayed appeal where trial counsel was ineffective and trial court breached its duty when denying petitioner due process by keeping petitioner ignorant of his appellate rights, and such a denial by trial court['s] failure to advise petitioner of his right to appeal sentence was plain error and prejudice[d] petitioner in perfecting a timely appeal....
>
> 3.  The appellate court erred in denying the petitioner leave to appeal when reason for failing to perfect a timely appeal was predicated upon the fact that petitioner simply did not know and was never told of such appeals rights until years later was reasonable explanation for the circumstances of this case....

It is the position of the respondent that petitioner's claims are not cognizable in federal habeas corpus review and that this action is time-barred.

## STATUTE OF LIMITATIONS

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which became effective on April 24, 1996, imposes a one-year statute of limitations on the filing of habeas corpus petitions. 28 U.S.C. § 2244(d) provides:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody

3

pursuant to the judgment of a State court. The limitation period shall run from the latest of-

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Applying the language of §2244(d)(1)(A), petitioner's conviction became final on February 11, 1998, thirty days after he was sentenced on January 12, 1998, when the time period expired to file a timely appeal. *See Searcy v. Carter,* 246 F.3d 515, 518-19 (6th Cir. 2001); *Marcum v. Lazaroff,* 301 F.3d 480, 481 (6th Cir. 2002); Ohio App.R. 4(A). The statute of limitations expired one year later, on February 11, 1999. Petitioner did not execute the instant habeas corpus petition until January 8, 2007, more than six and one half years later.

4

Additionally, his June 30, 2006, motion for delayed appeal did not toll or otherwise affect the running of the statute of limitations, because the statute of limitations had already long since expired prior to the date petitioner filed his motion for delayed appeal. "The tolling provision does not ... 'revive' the limitations period ( *i.e.,* restart the clock at zero); it can only serve to pause a clock that has not yet fully run." *Vroman v.. Brigano,* 346 F.3d 598, 601 (6 Cir. 2003), citing *Rashid v. Khulmann,* 991 F.Supp. 254, 259 (S.D.N.Y. 1998); *Winkfield v. Bagley,* 66 Fed.Appx. 578, unpublished, 2003 WL 21259699 (6th Cir. May 28, 2003)(same). Further, petitioner has failed to allege any extraordinary circumstances that would justify equitable tolling of the statute of limitations for the time period at issue here. *See Jurado v. Burt,* 337 F.3d 638, 643 (6th Cir. 2003).  Therefore, this action is time-barred, unless one of the provisions of §2244(d)(1)(B)-(D) apply.

Petitioner contends that his habeas corpus petition is timely because he did not know about and was not advised of his right to appeal.  Neither the transcript of petitioner's guilty plea nor sentencing indicate that the trial court advised petitioner of his limited right to appeal his sentence.  *See Transcripts,* Doc. No. 12.[2] In *DiCenzi v. Rose,* 452

---

[2]  The trial court advised petitioner, *inter alia,* at the time of the guilty plea:

COURT: If this Court would have found you guilty [after a trial], you would have had a right to appeal any finding of guilty to the Court of Appeals, the Tenth District Court of Appeals, do you understand that?

DEFENDANT: Yes, sir.

COURT: But by you entering a plea of guilty this morning, you are giving up those rights to any appeal to the Tenth District Court of Appeals, do

F.3d 465 (6th Cir. 2006), the United States Court of Appeals for the Sixth Circuit held that,

where a criminal defendant is not advised of and does not know of his right to appeal,

those claims relating to events that occurred at the time of sentencing may be timely under

28 U.S.C. § 2244(d)(1)(D) if the petitioner acted reasonably diligently in learning about his

right to appeal:

> Of course... had DiCenzi merely inquired of a court or a public
> defender regarding whether he had the right to an appeal, he
> could have found out that he did. He argues, however, that it
> is not reasonable to expect a defendant who pleaded guilty to
> be aware of mandatory statutory appeal rights from the
> sentence imposed, especially when neither the court nor his
> attorney at sentencing informed him of any such rights. In
> support of this argument, DiCenzi cites *Granger v. Hurt,* 90
> Fed.Appx. 97, 99-101 (6th Cir. Jan.23, 2004) (unpublished
> opinion), wherein an Ohio prisoner (Granger) had been told by
> his attorney that the attorney would appeal Granger's
> conviction. The attorney then failed to do so, and Granger did
> not discover this failure until he called the attorney to check on
> the status of his appeal two months after the deadline for filing
> the appeal had passed. The district court held that the proper
> date for starting the statute of limitations was the deadline for
> filing a notice of appeal of his sentence, since Granger *could*
> have discovered his attorney's failure on that date. We
> reversed, holding that the district court's decision "ignores the
> reality of the prison system and imposes an unreasonable
> burden on prisoners seeking to appeal," and noting that §
> 2244(d)(1)(D) "does not require the maximum feasible
> diligence, only 'due,' or reasonable, diligence." *Granger,* 90
> Fed.Appx. at 100 (citing *Wims v. United States,* 225 F.3d 186, 190
> n. 4 (2d Cir.2000)); *see also, e.g., Moore v. Knight,* 368 F.3d 936,

---

you understand that?

DEFENDANT: Yes, sir.

*Transcript, Guilty Plea,* at 12-13, Doc. No. 12

6

940 (7th Cir.2004) (evaluating a prisoner's due diligence in investigating trial errors, and noting the difficulties inherent in the prison environment); *Aron v. United States,* 291 F.3d 708, 712 (11th Cir.2002) (same). Finding that "the two months that Granger waited before inquiring about his appeal was, under the circumstances, not unreasonable," we held that Granger had exercised due diligence and thus that the AEDPA statute of limitations began running on the date he learned from his attorney that the appeal had not been filed. *Granger,* 90 Fed.Appx. at 100.

Accordingly, as noted by the Second Circuit,

The proper task in a case such as this one is to determine when a duly diligent person in petitioner's circumstances would have discovered [his right to an appeal]. After that date, petitioner was entitled to further delay (whether in actually making the discovery, or in acting on a previously made discovery, or for any other reason whatsoever), so long as he filed his petition within one year of the date in which the discovery would have been made in the exercise of due diligence.

*Wims,* 225 F.3d at 190....

[T]he date on which the limitations clock began to tick is a fact-specific issue the resolution of which depends, among other things, on the details of [a defendant's] post-sentence conversation with his lawyer and on the conditions of his confinement in the period after [sentencing].

*Wims,* 225 F.3d at 190-91 (citing *Easterwood v. Champion,* 213 F.3d 1321, 1323 (10th Cir.2000) (taking into account "the realities of the prison system" in determining due diligence)).

*Id.,* at 470-471. "[P]etitioner bears the burden of proving that he exercised due diligence, in order for the statute of limitations to begin running from the date he discovered the factual predicate of his claim, pursuant to 28 U.S.C. § 2244(d)(1)(D)." *Id .,* at 471, citing *Lott*

7

*v. Coyle,* 261 F.3d 594, 605-06 (6th Cir. 2001).

Here, petitioner was sentenced on January 12, 1998.  He states:

> I was left with the belief that once I pled guilty I had no rights and [there] was nothing I could do.
>
> [I]n July of 2005 I beg[a]n hearing rumors about inmates appealing their sentences and on August 29, 2005 I wrote the Ohio Public Defender['s] Office inquiring was there anything I could do to appeal my case.... [O]n September 9, 2005, the Ohio Public Defender responded there was nothing they could do to help me, but told me I could file a delayed appeal.

*Petitioner's Exhibit D*.  The public defender advised petitioner in a letter dated September 9, 2005:

> I am unable to locate sufficient merit in your case to warrant either post conviction relief or delayed appeal.  Thus, this office will be unable to assist you.  If you disagree with my analysis, I encourage you to seek pro-se relief.  If you wish to challenge the legality of the sentence your remedy would be delayed direct appeal under Appellate Rule 5.  Given the passage of time, it will be very difficult to obtain leave to file a delayed appeal.  I suggest you do not delay further.

*Petitioner's Exhibit D2*.  Petitioner nonetheless waited more than nine more months, until June 30, 2006, to file his motion for delayed appeal.  *Exhibits F and G to Return of Writ*.

If the approximate seven and one half year period of time it took petitioner to write the public defender to inquire about his right to appeal was reasonable within the meaning of *DiCenzi,* and reflects due diligence on his part, then petitioner's sentencing claim(s) appear to be timely.  Under such a scenario, the statute of limitations began to run on

September 9, 2005, the date petitioner learned about his right to appeal.  It ran for 294 days, until June 30, 2006, when petitioner filed his motion for delayed appeal, which tolled the running of the statute of limitations until December 13, 2006, when the Ohio Supreme Court dismissed petitioner's appeal.  *See Lawrence v. Florida*, 127 S.Ct. 1079, 1083 (2007).  The statute of limitations expired 71 days later, on  February 22, 2007.  Petitioner signed this petition on January 8, 2007.  *See* Doc. No. 1.

However, the record does not reflect that petitioner exercised diligence in discovering the factual basis for his claims.  Petitioner apparently made no effort to learn about his right to appeal for more than seven years from the date of his sentencing in January 1998, until August 2005, when he wrote to the Ohio Public Defender.  Although petitioner alleges that he "began hearing rumors about inmates appealing their sentences" in July 2005, it defies reason to conclude that such rumors were not circulating in 1998 when petitioner began serving his prison sentence.  Further, nothing in the record indicates that petitioner's conditions of confinement changed such that he would have been unable to write to the public defender earlier, or to visit the prison's law library, or to otherwise learn about the right to appeal.

The record reflects that, although petitioner initially entered a plea of not guilty by reason of insanity, he changed that plea to guilty after testimony had been given by both of his alleged victims.  *Transcript*, at 3-4; 38.  Defense counsel stated:

> Your Honor... we would be withdrawing the not guilty by
> reason of insanity... .  Mr. Ward was examined prior to the

9

> beginning of this case and some time ago before the beginning of this case that report was available, and that report, that information was shared with Mr. Ward, and... also we had an opportunity in consulting with a private expert since the beginning of the trial, and... we feel that by entering this plea of guilty we are doing so as to what we feel is in Mr. Ward's best interest, and I have discussed this with Mr. Ward and Mr. Ward is in agreement with the posture that we have now taken, and... we are now ready and willing and able to enter into a plea of guilty to the indictment....

> COURT: You're satisfied that based on your professional experience and with your working with Mr. Ward, based on your experience, you're entering this plea with the full knowledge and understanding that Mr. Ward knows exactly what he's doing this morning; is that correct, Mr. Janes? You have counseled with him professionally and you're satisfied; is that correct, Mr. Janes?

> MR. JANES: Yes, Your Honor, I am satisfied that he understands what is taking place.

*Transcript*, at 4-5.  The trial court advised petitioner of the nature of the charges against him, the maximum possible sentences he faced, and of all the rights he was waiving by pleading guilty.  *See id.*, at 6-35.  The trial court further instructed petitioner:

> [I]f at any time you do not understand what I'm saying, please stop me and you may ask Mr. Janes any questions at any time while I'm going through this, do you understand?

> DEFENDANT: Yes.

> COURT: If you have any questions at all, just indicate that to me and I'll let you consult with Mr. Janes, do you understand?

10

> DEFENDANT: Yes.
>
> COURT: Because I want to make sure, absolutely sure that you understand everything that's going on this morning, do you understand?
>
> DEFENDANT: Yes.

*Id.*, at 6-7. Petitioner said it was his desire to plead guilty. *Id.*, at 7. He had discussed the charges with his attorney and understood the nature of the offenses. *Id.*, at 8-9. He was satisfied with his attorney and was pleading guilty of his own free will. *Id.*, at 9. No threats or promises had been made to induce or force or coerce him into pleading guilty. *Id.* Petitioner at all times indicated that he understood. He never asked any questions, although the trial court repeatedly gave him the opportunity to do so, or to consult with his attorney. *Id.*, at 19, 23, 24. The trial court stated at the time of petitioner's guilty plea:

> [T]his Court has heard terrible, terrible facts relative to many cases, but I have to say... that these facts are as bad as they get.

*Id.*, at 34. Defense counsel agreed. *See id.*, at 33-34; 37-38. Further, it did not appear from the statement of facts that the prosecutor would have been unable to establish the charges against him. To the contrary, the evidence against petitioner appears to have been strong. *Id.*, at 25-32. Petitioner expressed his remorse. *Id.*, at 33. At sentencing, the prosecutor requested the maximum penalties. *Id.*, at 37. A harsh sentence appears to have been anticipated by the defendant, in view of the facts of this case. Defense counsel stated, "Mr. Ward knows that he will be punished and he will be punished severely, and, Your Honor,

he should be punished severely for these terrible, terrible things that he did." *Id.*, at 39. "Now I know that these are very serious crimes and I fully expect Mr. Ward will be punished severely for those crimes[.]" *Id.*, at 40. "I place Mr. Ward on the Court's mercy[.]" *Id.* Petitioner stated solely:

> I would like to apologize to the victims. Everything is wrong, the things I have done are wrong, and I ask them for forgiveness for what I have done, and I know that it will be, or it might be never they don't forgive me, you know, but I'm asking God for them to forgive me if they don't, I am asking God to forgive me for what I have done.

*Id.*, at 41. After the trial court imposed sentence, petitioner said he understood the sentence and, in response to the trial court's inquiry, had no questions. *Id.*, at 47-48.

Petitioner alleges as justification for his seven year delay in making any inquiry regarding available legal options to challenge his convictions and sentence, that he was "not mentally or psychological[ly] sound in any of the decision[s] that he made in this case," *Traverse,* at 10, and was "undergoing confusion, doubt and uncertainty" at the time of his guilty plea. *Id.* He further alleges that defense counsel undermined his ability to pursue an appeal by advising him not to trust jail house lawyers or permit them to file anything on his behalf because defense counsel would "get him back in court as soon as the law change[d]" and once the prison became overcrowded petitioner would be released. *Id.*, at 11. Petitioner further has requested that respondent be directed to submit a copy of petitioner's psychological evaluation made for sentencing purposes and all other records related to petitioner's "state of mind and behavior" at the time he was sentenced, and that

the record be expanded here to include such documents.  *Id.*, at 12-13.

Rule 7 of the Rules Governing Section 2254 Cases in the United States District Courts provides:

> (a) In General. If the petition is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the petition. The judge may require that these materials be authenticated.
>
> (b) Types of Materials. The materials that may be required include letters predating the filing of the petition, documents, exhibits, and answers under oath to written interrogatories propounded by the judge. Affidavits may also be submitted and considered as part of the record.
>
> (c) Review by the Opposing Party. The judge must give the party against whom the additional materials are offered an opportunity to admit or deny their correctness

However, none of documents requested by petitioner would assist him in establishing that this action is timely or in demonstrating that he exercised due diligence in discovering the factual predicate for his claim(s).  The transcript of petitioner's guilty plea and sentence belies petitioner's assertion that he was confused or uncertain of his decision to plead guilty or that he did not understand what was going on at the time of his guilty plea or sentence.  In addition to the facts referred to above, the record indicates that petitioner had been a member of the varsity basketball team, had spent a year in the ROTC, and "was getting A's and B's in school." *Id.*, at 38.  Defense counsel requested that the trial judge, in imposing sentence, take into consideration that petitioner had been mentally ill; however, the record indicates that petitioner was competent and understood the

13

proceedings at the time of his guilty plea.  Petitioner has offered no evidence to suggest that any illness after the time of his guilty plea and sentence rendered him unable to exercise due diligence in learning about available options to challenge his convictions and sentence, discovering his right to appeal or in promptly filing his motion for delayed appeal after being advised by the public defender in September 2005, to do so.  Medical or psychological reports made at the time of petitioner's sentence would not alter this conclusion.  Further, physical or mental illness does not justify equitable tolling of the statute of limitations unless such illness actually prevented the petitioner from filing a timely habeas corpus petition.  *See Frazier v. Moore,* unpublished, 2006 WL 3146436 (S.D. Ohio October 31, 2006), citing *Brown v. McKee,* 232 F.Supp.2d 761, 767 (E.D.Mich. 2002) (citing to *Nara v. Frank,* 264 F.3d 310, 320 (3rd Cir. 2001)); *Miller v. Runyon,* 77 F.3d 189, 191 (7th Cir. 1996)*United States v. Harris,* 268 F.Supp.2d 500, 506 (E.D.Pa. 2003); *Waters v. Renico,* 2005 WL 1838625 (E.D. Michigan July 29, 2005); *Price v. Lewis,* unpublished, 119 Fed.Appx. 725 (6th Cir. January 5, 2005); *Rhodes v. Senkowski,* 82 F.Supp.2d 160, 168-70 (S.D.N.Y. 2000); *Herbst v. Cook,* 260 F.3d 1039, 1044 (9th Cir. 2001); *Biester v. Midwest Health Serv., Inc.,* 77 F.3d 1264, 1268 (10th Cir. 1996); *Lopez v. Citibank, N.A.,* 808 F.2d 905, 907(1st Cir. 1987). Petitioner's request to expand the record with psychological and/or medical reports made at the time of his sentencing, *see* Doc. No. 13, is therefore **DENIED**.

Additionally, accepting as true petitioner's allegation that defense counsel advised him not to trust jailhouse lawyers would not excuse the seven year failure to take any action whatsoever.  Petitioner simply has failed to meet his burden of establishing by a

preponderance of evidence that he exercised due diligence in discovering the factual predicate for his claim(s). *See DiCenzi v. Rose, supra,* 452 F.3d at 471.

Under 28 U.S.C. §2244(d)(1)(D), when a defendant is not advised of his right to appeal, the statute of limitations does not begin to run on a claim that the state appellate court improperly denied a motion for delayed appeal until the date that the appellate court denied such motion. *DiCenzi v. Rose, supra,* 452 F.3d at 469. Here, again, that date is August 8, 2006, and using such date as the start for the running of statute of limitations in this case, it appears that petitioner's claims that the state appellate court improperly denied his motion for delayed appeal would be timely.

However, this Court is persuaded by the reasoning of Judge Frost in a decision of this Court, *Monroe v. Jeffries,* 2007 WL 1814940 (S.D. Ohio Eastern Division June 21, 2007), concluding that *DiCenzi v. Rose, supra,* must be read in conjunction with *Johnson v. United States,* 544 U.S. 295 (2005), and that petitioner's diligence must be considered under the plain language of §2244(d)(1)(D).

In *Johnson v. United States, supra,* the petitioner challenged his federal conviction as a career criminal on the basis that a predicate state court conviction had been vacated. The United States Supreme Court held that the statute of limitations[3] did not begin to run on

---

[3] In *Johnson,* the Supreme Court actually considered the statute of limitations established in 28 U.S.C. §2255 ¶6, which is analogous to 28 U.S.C. §2244(d)(1) and which provides as follows:

A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of--

15

petitioner's claim until the date that the petitioner learned of the state court *vacatur* of conviction, **provided** that the defendant acted diligently in obtaining the state court order vacating the conviction.  *Id.*, at 310.  Johnson had waited more than three years after his federal sentence had been imposed before attacking his conviction in state court by filing a state habeas corpus petition. *Id.*, at 311.  The sole explanation he offered for this delay was his *pro se* status and lack of legal sophistication.   The Supreme Court rejected this explanation as an inadequate, stating:

> [W]e have never accepted *pro se* representation alone or procedural ignorance as an excuse for prolonged inattention when a statute's clear policy calls for promptness, and on this record we think Johnson fell far short of reasonable diligence in challenging the state conviction. Since there is every reason to believe that prompt action would have produced a state vacatur order well over a year before he filed his [federal] petition, the [petition is untimely].

--------

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.,* at 311.  Judge Frost, in *Monroe v. Jeffries,* applied *Johnson,* reasoning as follows:

> Just as the petitioner's claim in *Johnson* did not arise until the state court vacated his prior conviction, Monroe's claim that he was denied the right to appeal his sentence did not arise until after the Ohio Court of Appeals denied his motion for leave to appeal. Similarly, both a delay in moving to set aside a state conviction on which a career offender determination rests and a delay in filing a motion for leave to appeal undermine the purpose of the AEDPA to eliminate delay and bring finality to criminal convictions. *Johnson,* 544 U.S. at 307-08.

> *DiCenzi,* which was decided after *Johnson,* did not cite *Johnson* or consider the impact of a delay in filing a motion for delayed appeal. The reason that the *DiCenzi* court did not refer to *Johnson* in deciding when the statute of limitations began to run appears to be because it found as a fact that the petitioner DiCenzi filed his motion for delayed appeal promptly after first learning that he had a right to appeal:

>> On May 27, 1999, ... [DiCenzi] was sentenced to five years imprisonment on the vehicular homicide count and eighteen months on the vehicular assault count, to be served consecutively. This constituted the maximum possible sentence for these convictions, and thus under Ohio law the sentencing judge was required to make certain specific factual findings and inform DiCenzi of his right to appeal his sentence despite his guilty plea. Ohio Rev.Code §§ 2953.08(A)(1)(b); 2953.08(A)(4). At sentencing, however, the trial judge did not inform DiCenzi of his right to appeal his sentence.

>> ... [I]n August 2001, DiCenzi contacted the Cuyahoga County Public Defenders' office ("Public Defender"), who informed him of his right to appeal his sentence. As a result, DiCenzi immediately filed a motion for leave to file a delayed appeal of his sentence on August 23, 2001.

452 F.3d at 466-67.

*Monroe v. Jeffries, supra,* 2007 WL 1814940 *3.[4]

Applying the due diligence requirement of *Johnson* and §2244(d)(1)(D) to this case, this Court finds that petitioner has failed to offer adequate justification for the seven years that it took him to learn of his right to appeal.  Moreover, despite being explicitly advised by the public defender to promptly file his motion for delayed appeal, petitioner waited more than nine months  before filing his motion for delayed appeal in the state appellate court.  Under these circumstances, the Court concludes that petitioner has simply failed to establish that he acted with due diligence such that 28 U.S.C. §2244(d)(1)(D) applies to render his claim(s) timely.

Petitioner asserts that his habeas corpus petition is timely under the provision of 28 U.S.C. §2244(d)(1)(B), because his attorney was constitutionally ineffective for failing to advise him about his right to appeal his sentence and in failing to file the appeal, and that such action constituted a state created impediment that prevented him from timely filing this habeas corpus petition.  *Amended Petition*, at 12.  This Court is not persuaded by this argument.

The limitations provision set forth in 28 U.S.C. § 2244(d)(1)(B) has been found to

---

[4] Judge Frost remanded *Monroe* to the Magistrate Judge for an evidentiary hearing to determine the date that Monroe learned about his right to appeal; however, the case was later dismissed on the petitioner's own request.  *See id.*, Case No. 2:05-cv-857.

apply in cases where the petitioner has alleged facts indicating that his counsel on appeal was ineffective in perfecting or pursuing an appeal and such ineffectiveness actually prevented petitioner from filing a timely habeas petition.  For example, *Waldron v. Jackson,* 348 F.Supp.2d 877 (N.D.Ohio 2004), concluded that the statute of limitations did not begin to run under 28 U.S.C. § 2244(d)(1)(B) where counsel failed to perfect a timely appeal after being requested to do so.  *See also Merriweather v. Brunsman,* 2006 WL 1698825 (S.D. Ohio June 20, 2006); *Woods v. Jackson,* 2006 WL 746293 (S.D. Ohio March 22, 2006);  *Dean v. Pitcher,* 2002 WL 31875460 (E.D.Mich. Nov. 7, 2002); *Collier v. Dretke,* 2004 WL 1585903, (N.D.Tex. July 13, 2004) (unpublished *Report and Recommendation*), adopted, 2004 WL 1944030 (N.D.Tex. Aug. 31, 2004); *Felton v. Cockrell,* No. 3:03-CV-0764-L, 2003 WL 21946862 (N.D.Tex. Aug. 13, 2003). *But cf. Dunker v. Bissonnette,* 154 F.Supp.2d 95, 105 (D.Mass. 2001) (rejecting argument that the petitioner's court appointed attorney was a "state actor" under § 2244(d)(1)(B)); *Winkfield v. Bagley,* 66 Fed.Appx. 578, 582-83 (6th Cir. May 28, 2003)(no causal connection between attorney's ineffectiveness in filing appeal and petitioner's ability to file federal habeas corpus petition where defendant waited ten years after last communicating with his attorney to file his motion for delayed appeal.)[5]

However, the record in this case does not indicate that defense counsel performed in a constitutionally unreasonable manner.  Petitioner does not allege, nor does the record reflect, that counsel failed to file an appeal after having been requested to do so.  *See*

---

[5] *Waldron* noted that the holding in that case appeared to be inconsistent with the Sixth Circuit's unpublished decision in *Winkfield v. Bagley, supra.  Waldron v. Jackson, supra*, 348 F.Supp.2d at 885-86 n.4.

*Waldron v. Jackson, supra*, 348 F.Supp.2d at 883, citing *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *White v. Schotten*, 201 F.3d 743, 752 (6th Cir. 2000); *Ludwig v. U.S.*, 162 F.3d 456, 459 (6th Cir. 1998). Further, even accepting as true petitioner's allegation that his attorney failed to advise him of his right to appeal, that fact does not necessarily render counsel's performance constitutionally inadequate in view of petitioner's guilty plea, the Ohio Public Defender's letter indicating that there were no nonfrivolous grounds for appeal, and statements by defense counsel indicating that the trial court's sentence was not unanticipated, as petitioner expected a harsh sentence in view of the egregious nature of the offenses charged. *See Petitioner's Exhibit D2*; *Roe v. Flores-Ortega, supra*, 528 U.S. at 476-79.[6] Although petitioner appears to assert that his attorney was constitutionally ineffective

---

[6] In *Roe v. Flores-Ortega, supra*, 528 U.S. at 476, the United States Supreme Court held:

> In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, we believe the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal. We employ the term "consult" to convey a specific meaning-advising the defendant about the advantages and disadvantages of taking an appeal, *and making a reasonable effort to discover the defendant's wishes*. If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal.... If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance.

in failing to file the appeal or advise him of his right to appeal because his sentence violated *Blakely v. Washington*, 542 U.S. 296 (2004), *see Traverse,* at 7-8, petitioner was sentenced in January 1998, long before the United States Supreme Court's June 26, 2000, decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), or the June 24, 2004, decision in *Blakely, supra*. Counsel was not constitutionally ineffective in failing to anticipate changes in law that occurred years later.   *See Green v. United States*, 65 F.3d 546, 551 (6th Cir. 1995).

For all the foregoing reasons, petitioner's motion to expand the record, *see* Doc. No. 13, is **DENIED.**  The Magistrate Judge **RECOMMENDS** that this action be **DISMISSED** as barred by the one-year statute of limitations under 28 U.S.C. §2244(d).

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).   A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.   Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations

---

*Id.*, at 478 (emphasis added)(citation omitted).  An attorney's performance would not be constitutionally unreasonable in failing to consult with his client  regarding an appeal, for example, where the defendant pleads guilty, is sentenced as anticipated, advised by the trial court of his right to appeal, expresses no interest in appealing, and there exist no nonfrivolous grounds for appeal.  *Id.*, at 479.

made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation*.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

January 4, 2008                                               s/Norah McCann King
                                                                      Norah McCann King
                                                                      United States Magistrate Judge